maintained clear conduct during his entire period of his incarceration and has done some programming but never completed his GED. The subject is assigned a work detail but it is hard to believe that he does much in the way of work because he is a pretty frail old man and appears to weigh about 100 pounds.

During today's hearing his attorney highlighted his multiple medical problems and I believe it is in the Commission's best interest to recommend the subject be paroled at this time as I don't believe he is going to live much longer based on his physical appearance and list of medical ailments. Additionally, I believe the subject should be paroled based on the amount of time he served and specifically he has engaged in some programming and maintained clear conduct.

Exhibit B at 2

On December 2, 2011, the Reviewing Examiner, who did not conduct the interview and had no opportunity to assess Furnari's condition, recommended continuation to a fifteen year reconsideration. Notably, the Reviewing Examiner did not base his recommendation on the offense conduct for which Furnari had been sentenced nor on whether at the present time he is a significant parole risk. Instead the Reviewing Examiner based his recommendation solely on relevant conduct for which Furnari had not ever been convicted or even charged (Exhibit B at 3).[1]

---

[1] Notably despite the Third Circuit's finding that "[t]he government's own determination that Casso had lied to it about many matters calls into question whether the Parole Commission had a rational basis for its decision to the extent that decision was based on information from Casso" *Furnari v. Warden, Allenwood Federal Correctional Inst.* 218 F.3d 250 (3rd Cir.,2000), the reviewing examiner concluded that the information supports holding Furnari responsible for the murders. (Exhibit B at 3)

On December 19, 2011,  the Commission ordered  Original Jurisdiction Designation and transferred the case to the other Commissioners for their votes on the disposition of the case (Exhibit C).  On January 20, 2012, the Commission issued a Notice of Action continuing to a 15 year reconsideration hearing.

This Appeal followed.

## ISSUES ON APPEAL

Pursuant to 28 C. F. R. §2.26(e) the within Appeal presents the following issues :

1.      Especially mitigating circumstances relating to Furnai's age and   probability of success on parole justify a different decision; (28 C.F,.R. §2.26(e)(3))

2.      There are compelling reasons why a more lenient decision should be rendered on grounds of compassion. (28 C.F,.R. §2.26(e)(7).

3.      The decision outside the guidelines was not supported by the reasons or facts as stated  (28 C.F,.R. §2.26(e)(2).

4.      The Commission did not follow correct procedure in deciding the case, and a different decision would have resulted if the error had not occurred (28 C.F,.R. §2.26(e)(5).

## POINT I

### FURNARI'S ADVANCED AGE AND FAILING HEALTH CONSTITUTE COMPELLING REASONS WHY A MORE LENIENT DECISION SHOULD BE RENDERED ON GROUNDS OF COMPASSION (28 C.F.R §§2.26(e)(3)(7)

Christopher Furnari  is 87 years old and in deteriorating health.  He suffered  a

4

myocardial infarction in 2006 and, in addition, suffers from hypertension, coronary artery disease, congestive heart failure, angina, prostate hypertrophy. In the six months preceding the hearing, he had been to the emergency room several times.. He is generally confined to a wheelchair and is unable to take of his daily needs on his own without assistance from other prisoners who for the past two years have provided necessary assistance for the tasks of daily living such as eating, bathing and dressing.

He has already served 305 months imprisonment. He has been eligible for parole since 1996. He is the only individual in the history of our criminal justice system who, as a result of the successive decisions of the Parole Commission, has served more than 25 years imprisonment for aiding and abetting a bid-rigging scheme.

As the Hearing Examiner recognized based on personal observation of Mr. Furnari's condition, his advanced age and ill health, the likelihood that Christopher Furnari will survive much longer is remote. (Exhibit B at 2).

The decision to deny Mr. Furnari parole ignores the Commission's obligation to give meaningful, rational and independent consideration to whether or not he is at this time a significant parole risk. Clearly, given his frail condition he is not. Nor does the notice of action state that the denial of parole is based on any potential risk to society.

On the contrary, after more than twenty-five years imprisonment for a non-violent offense, Christopher Furnari is at long last deserving of the opportunity to spend his final

5

years in normal society in the company of his family.  Despite his prolonged period of

incarceration, Furnari is blessed with the love and support of his family who have

maintained constant contact with him throughout the years.   If parole were to be granted,

he would  reside with Thomasina Furnari, his wife of 35 years,  at her home at 23 Junction

Court  in Staten Island.  As a result of his advanced age and frail condition he  does not

intend to seek  employment.  He anticipates that his medical needs will be attended to by

Dr. Thomas Constantino, a board certified  cardiologist with offices at 2248 Richmond

Road, Staten, New York 10306.

He will be eligible for Medicare Part A and Part B.  In addition, he will be covered by

his wife's health insurance plan and his  family, including his  son Salvatore and his

daughter, Debra, have committed whatever resources are necessary in the event that  the

cost of his medical care  exceeds the benefits provided by Medicare and insurance.

In *United States v. Blarek* , 7 F.Supp.2d 192, 210-11 (E.D.N.Y.,1998), Judge Weinstein

sitting in the Eastern District of New York stated:

> Mercy is seldom included on the list of "traditional" rationales
> for sentencing. It is, however, evinced by the federal sentencing
> statute, 18 U.S.C. §§ 3553(a), which provides, as noted above,
> that the lowest possible penalty consistent with the goals of
> sentencing be imposed. *[citation omitted]*

> The notion that undue harshness should be avoided by those
> sitting in judgment has long been a part of the human fabric and
> spirit.  Lenity is often the desirable route.  To impose the harsh
> sentence suggested by Probation and the government under the

Guidelines without appropriate downward departures would amount to an act of needless cruelty given the nature of the crimes committed and the personal circumstances of these defendants. Reasoned application of both sets of philosophical considerations--just desert and utilitarian--lead to amelioration.

Having served more than twenty-five years in prison, Christopher Furnari has paid his debt to society. The time has come for mercy. There is no reason for him to be condemned to die in prison.

## POINT II

### THERE IS NO RATIONAL BASIS FOR THE CONCLUSION THAT GRANTING FURNARI PAROLE AFTER 25 YEARS IMPRISONMENT MINIMIZES THE SERIOUSNESS OF THE OFFENSE AND PROMOTES A DISRESPECT FOR THE LAW (C.F.R. §2.26(e)(3))

The principal purpose and intent of the Parole Commission and Reorganization Act (18 U.S.C. §§4201-4218) was described in the House Conference Report, a joint explanatory statement of conferees made to both the House and the Senate. H.R.Rep. No. 94-838, 94th Cong., 1st Sess., reprinted in 1976 U.S. Code Cong. & Admin. News, pp. 335, 351. The report stated in relevant part:

Determinations of just punishment are part of the parole process, and these determinations cannot be easily made because they require an even-handed sense of justice. There is no body of competent empirical knowledge upon which parole decision-makers can rely, yet it is important for the parole process to achieve an aura of fairness by basing determinations of just punishment on comparable periods of incarceration for similar offenses committed under similar circumstances. The parole decision-makers must weigh the concepts of general and special deterrence, retribution and

7

punishment, all of which are matters of judgment, and come up with determinations of <u>what is meant by would not depreciate the seriousness of his offense or promote disrespect for the law that, to the extent possible, are not inconsistent with the findings in other parole decisions</u> [emphasis added]

*See also Priore v. Nelson*, 626 F.2d 211 (2nd Cir. 1980).

The finding that "a grant of parole at this time would minimize the seriousness of the offense and promote disrespect for the law" (Exhibit A) completely ignores the Commission's obligation to consider comparable periods of incarceration for similar offenses committed under similar circumstances.

A comparison with the comparable periods of incarceration imposed on close to two dozen similarly situated defendants sentenced for the same offenses reflects society's definition of just punishment:

| Defendant | Offense of conviction | Basis for upward departure | Sentence Imposed | Reference |
|---|---|---|---|---|
| D'Amico | RICO, Illegal gambling, Extortion, robbery, tax evasion, 924(c) | leadership & organized crime | 147 months | *United States v. Damico*, 99 F.3d 1431 (7th Cir.1999) |
| Robert Panero | Hobbs Act | organized crime, extortion & murder(charged) | 180 months | *United States v. Panaro*, 266 F.3d 939 (9th Cir. 2001) |
| Stephen Cino | Hobbs Act & money laundering | organized crime, extortion & murder(charged) | 15 years | *United States v. Panaro*, 266 F.3d 939 (9th Cir. 2001) |
| Venero Mangano | Hobbs Act | organized crime (acting boss) conspiracy to murder witnesses | 188 months | *U.S. v. Gigante*, 94 F.3d53 (2dCir.1996) |

8

| | | | | |
|---|---|---|---|---|
| Benedetto Aloi | Hobbs Act | organized crime (underboss) conspiracy to murder witnesses | 200 months | U.S. v. Gigante, 94 F.3d53 (2dCir.1996) |
| Liborio Bellomo | Hobbs Act conspiracy | organized crime (acting boss) murder | 120 months | United States v. Bellomo, 96 CR 430 (LAK) |
| Gus Alex | Extortion | organized crime/threats of Physical Harm | 188 months | United States v. Rainone, 32 F.3d 1203 (7th Cir. 1994) |
| Nicholas Gio | Extortion | organized crime/ arson | 137 months | United States v. Rainone, 32 F.3d 1203 (7th Cir. 1994) |
| Nicholas Corozzo | Hobbs Act/ Loansharking | organized crime (capo), obstruction | 108 months | United States v. Corozzo, 97 CR 080 (EDNY) |
| Leonard diMaria | Extortion | organized crime (capo), obstruction | 104 months | United States v. Corozzo, 97 CR 080 (EDNY) |
| Joseph Tangorra | Loansharking(47 counts) | organized crime, narcotics | 192 months | United States v. Tangorra, 00 CR 1167 (EDNY) |
| Joseph DeFede | Extortion | organized crime (acting boss) | 60 months | United States v. DeFede, 98 CR 373 (SDNY) |
| Vito Rizzuto | RICO | organized crime (murder) | 20 years | |
| Peter Calabrese | RICO | organized crime (3 murders) | 10 years | 03-1382 (EDNY) |
| Joseph DeSimone | RICO | organized crime (3 murders) | 10 years | 03-1382 (EDNY) |
| Michael Cardello | RICO | organized crime (3 murders) | 10 years | 03-1382 (EDNY) |
| John Palazzolo | RICO | organized crime (3 murders) | 10 years | 03-1382 (EDNY) |

| Bolivar Benebe | RICO | organized crime (gang violence) (murder) | 240 months | United States v. Benabe, 436 Fed. Appx. 639 (7th Cir.,2011) |
| Steven Scott | RICO | Ayran Prison Gang (murder & drug trafficking in prison) | 220 months | U.S. v. Scott 642 F.3d 791 (9th Cir. ,2011) |

The above defendants are all alleged to be members of organized crime or violent gangs. The offense conduct or the uncharged conduct for each of the above defendants all involved murders in furtherance of a racketeering activity.   Of the almost two dozen similarly situated offenders, the longest period of imprisonment (at 80% of the sentence) is 190 months or 15 years.  There is not another defendant convicted of extortion  who has been imprisoned for life based solely on uncharged conduct.

In addition, ignored by the decision is the fact that one of Mr. Furnari's co-defendants Salvatore Santoro, who was alleged to have been the  Underboss in the Lucchese crime family during the 1980s  and who was also sentenced to 100 years imprisonment was given a presumptive date of parole of November 13, 2001 (15 years)  due to his ill health and advanced age (Exhibit C: Pre-Hearing Assessment at 2).  Furnari is no less deserving than Santoro.  He has already served more that three times the Guideline range of 100 months for his offense.  He has committed no other offenses following his conviction and has a record of conduct which is reflects adherence to the rules of the prison and has not committed a single disciplinary infraction in a quarter century of confinement.

10

The grossly disproportionate result of the decision is wholly inconsistent with the mandate that the Commission's decision reflect an "even-handed sense of justice". Furthermore the conclusion that after 25 years imprisonment, permitting an 87 year old offender to return home to die would "minimize the seriousness of the offense and promote disrespect for the law" is patently inconsistent with the  punishment society has clearly deemed sufficient in every other case.

The Order of a continued incarceration until a Reconsideration Hearing in 2026 is a death sentence which has no rational basis and simply evinces a result-oriented determination which can only undermine confidence and respect for the integrity of our criminal justice system.

## POINT III

**THE ORDER OF A  RECONSIDERATION HEARING 2026 THIRTEEN YEARS AFTER THE LIFE OF THE COMMISSION HAD EXPIRED VIOLATES TITLE 18 U.S.C.A. §§ 4206 ((C.F.R.§§2.26(e)(5))**

Title 18 U.S.C.A. §§ 4206 which provides for the phase-out of the United States Parole  Commission provides that:

> Section 235(a)(1) of Pub.L. 98-473, set out as a note under section 3551 of this title, provided that the repeal of this chapter is effective Nov. 1, 1987, and applicable only to offenses committed after the taking effect of such repeal. Section 235(b)(1)(A) of Pub.L. 98-473 provided that the provisions of this chapter in effect before Nov. 1, 1987, shall remain in effect for five years after Nov. 1, 1987, as to an individual who

11

committed an offense or an act of juvenile delinquency before Nov. 1, 1987, and as to a term of imprisonment during the period described in section 235(a)(1)(B) of Pub.L. 98-473. Pub.L. 101-650, Title III, §§316, Dec. 1, 1990, 104 Stat. 5115, extended the period that this chapter remains in effect after Nov. 1, 1987, from five years to ten years. Pub.L. 104-232, section 2(a), Oct. 2, 1996, 110 Stat. 3055, extended the period that this chapter remains in effect after November 1, 1987, from ten years to fifteen years. Pub.L. 107-273, §§ 11017, set out as a note under 18 U.S.C.A. §§ 4202, deemed references to "fifteen" to be "eighteen" in Pub.L. 98-473, §§ 235(b), as it relates to 18 U.S.C.A. §§ 4201 et seq.

Title 18 U.S.C. 3551 Note b(3) provides:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, pursuant to Section 4206 of title 18, United States Code. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

In  *Romano v. Luther*, 816 F.2d 832 (2d Cir.1987), the Court of Appeals for the Second Circuit held that §§ 235(b)(3) "requires the Parole Commission to set parole release dates within applicable guideline ranges *only* for prisoners who will be in prison October 30, 1992, the day before the end of the five-year *transition period*...." 816 F.2d at 842. (Emphasis added).

While so holding, the court noted that "the subsection is a 'winding-up' provision that will provide the certainty of release within the appropriate guideline range to those for whom the Parole Commission, prior to its abolition, might otherwise have either taken no

12

action or set a parole date beyond their guideline ranges." 816 F.2d at 840. In 2011 the term

of the Commission was extended until November 1, 2013. *See* United States Parole

Commission Act of 2011, Pub.L. No. 112–44, § 2, 125 Stat. 532 (2011).

The Notice of Action does not set a parole release date.   Instead it orders

continuation "to a 15 year reconsideration hearing (October ,2026)" (Exhibit A). Clearly,

Christopher Furnari, who will be 103 years old in 2026 will not live to see the hearing.

However, even assuming *en arguendo* the statistical impossibility that he is alive at the time

the hearing is scheduled, he will be in the unusual position of having an opportunity to

appear before a Commission whose authority will have expired 13 years before the date

of the hearing.

The Notice of Action of January 20, 2012  exceeds the statutory  authority of the

Parole Commission and effectively deprives Furnari of an opportunity to exercise his right

to  appeal the release date (assuming a release date is forthcoming) prior to the expiration

of the Commission.

13

## CONCLUSION

The order of January 20, 2012  must be reversed and Christopher Furnari must be given a release date. He should be released on parole to spend his remaining days with his family.

Respectfully submitted

Flora Edwards (fe0808)
Attorney for Christopher Furnari
115 Broadway - Suite 1505
New York, New York 10006
212-785-3344

14

## TABLE OF EXHIBITS

Exhibit

Notice of Action dated December 22, 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A

Hearing Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B

Order Continuing Original Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C

Pre-Hearing Asssessment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D



U.S. Department of Justice
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

**Notice of Action**

| | | |
|---|---|---|
| Name:  FURNARI, Christopher | Institution:   Allenwood FCI-Low | |
| Register Number:  19815-054 | Date: | January 20, 2012 |

As a result of the hearing conducted on October 26, 2011, the following action was ordered:

Continue to a 15-Year Reconsideration Hearing in October 2026.

**REASONS:**

Your offense behavior has been rated as Category Eight severity because it involved Murder, Conspiracy to Commit Murder and Multiple Acts of Extortion through Racketeering offenses. Your salient factor score is 8. See the attached sheet for an explanation of your individual Salient Factor Score items. The table at the bottom presents the points for Salient Factor Score Item C. You have been in federal confinement as a result of your behavior for a total of 300 months as of 11/13/2011. Guidelines established by the Commission for the above offense behavior indicate a range of 100+ months to be served before release for cases with good institutional adjustment and program achievement. After review of all relevant factors and information presented, a decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating case factors: You were a high-ranking member of an organized crime family and the Commission finds that you are responsible for the conspiracy to commit multiple murders (including those of Lee Schleifer, Richard Taglianetti and Frank DeCicco) and attempted murder (Abinanti) in furtherance of the criminal conspiracy. These crimes are aggravated by the fact that they were committed in furtherance of the aims of a criminal organization and that one of the victims was a prospective prosecution witness and another of the murders was a contract murder. The Commission recognizes your current age and health concerns. However, notwithstanding these factors, the Commission finds that a grant of parole at this time would minimize the seriousness of the offense and promote disrespect for the law.

You have also been scheduled for a statutory interim hearing during October 2013.

The above is an original jurisdiction decision, and is appealable to the Commission under 28 C.F.R. 2.27.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    U.S. Probation Office
       Southern District of New York
       500 Pearl Street, 7th Floor
       New York, NY  10007-1312

Designation & Sentence Computation Ctr
U.S. Armed Forces Reserve Complex
Grand Prairie Office Complex
346 Marine Forces Drive
Grand Prairie, TX 75051

Flora Edwards
Attorney at Law
115 Broadway Street, Suite 1505
New York, NY 10006



# EXHIBIT B

## HEARING SUMMARY

**Name: Furnari, Christopher**                                      Reg No: 19815-054

### Hearing Parameters

Hearing Format .............................: **In Person**
Hearing Type ...............................: **15-Year Reconsideration**
Hearing Date ................................: October 26, 2011
Examiner.....................................: Mark A. Tanner
Institution ....................................: Allenwood FCI-Low

### Sentence Parameters

Sentence Type................................: **Federal**
MR/Statutory Release .................: 7/16/2053
Full Term Date.............................: 11/15/2086
Months in Custody......................: 300 as of 11/13/2011
Fines/Restitution/Assessment ......: N/A
Detainer.......................................: None

**Additional text regarding the above parameters:** The subject is serving a 100 year sentence for Racketeering, Racketeering Conspiracy and Extortion.

### Prior Action & Institutional Factors

**Prior Action:** See the Prehearing Assessment dated October 11, 2011 by Mark Tanner.

---

**Codefendants:** There are seven codefendants see the Prehearing Assessment dated 10/11/2011, for full details.

**Victim Information:** There are no victims registered for notification in the Victim/Witness Program.

**Representative & Representative's Statement:** Attorney Flora Edwards at 115 Broadway Street, Suite 1506, New York, NY 10006; telephone (732) 208-1408. He attended today's hearing and stated the subject is of advanced age at 87 has multiple health problems and certainly should be paroled if for no other reasons that humanitarian grounds. Further, she stated the offense he was convicted of Extortion, and the unusual lengthy sentence that he received is unusual and the subject has served a quarter century for his Extortion conviction. She believes that is excessive to have to serve that much time and she presented information with ten additional cases showing those convicted of similar offenses received at least half of the amount of time that Mr. Furnari received and has served.

The subject introduced information which the Commission already had from an Assistant AUSA who originally prosecuted the case in that they had retracted their statements that Mr. Furnari was a member of the commission and in fact he was not a member of the Organized Crime Commission in which the five families were involved and he was strictly involved of extortion and the witness, Mr. Kaso was deemed not credible.

**Prisoner's Statement:**  Mr. Furnari stated that he is 87 years old and has multiple health problems is in a wheelchair most of the time and would like to go home and die in peace.

**Discipline:**  None.

**Program Achievement:**  None.

**Release Plans:**  The subject plans to live with his wife, Tomasina Furnari at 214 Seicher Street, Staten Island, NY 10312.

<u>Guideline Parameters, Evaluation & Recommendation</u>

**Severity Justification:**   Category Eight because it involved murder, conspiracy to commit murder and multiple acts of extortion through racketeering offenses.

**Salient Factor Score:**   8

2.20 Guideline Range: ...................................... 100+

**Evaluation:**  Christopher Furnari is an 87 year old male offender appearing before the Commission for a 15-Year Reconsideration Hearing. He was a copal in the Lucchese Corn Family which was involved in murders, extortion and racketeering. It should be noted that he was convicted of Extortion, Racketeering, and Conspiracy to Commit Racketeering which involved Murders that he may have known about but did not participate in. Hence the Category Eight rating of his offense. The subject has maintained clear conduct during his entire period of his incarceration and has done some programming but never completed his GED. The subject is assigned a work detail but it is hard to believe that he does much in the way of work because he is a pretty frail old man and appears to weigh about 100 pounds.

During today's hearing his attorney highlighted his multiple medical problems and I believe it is in the Commission's best interest to recommend the subject be paroled at this time as I don't believe he is going to live much longer based on his physical appearance and list of medical ailments. Additionally, I believe the subject should be paroled based on the amount of time he served and specifically he has engaged in some programming and maintained clear conduct.

**Recommendation:**  Parole effective 1/12/2012, after the service of 302 months.

**Conditions:**  Standard conditions no special ones.

**Statutory Interim Hearing:**  N/A.

**Guideline Use:**  A departure from the guidelines at this consideration is not warranted.

**Furnari, Christopher, Reg. No. 19815-054**                    **Page 2 of 2**

**Additional Text:**  None.

[Signature]


MAT/PAH
November 29, 2011


**Executive Reviewer's Comments:  Examiner Pacholski, dated 12/2/11;** I disagree with the Hearing Examiner's recommendation to grant a parole effective date of 1/12/12, after the service of 302 months. The Hearing Examiner explains that our subject's age, medical ailments, and his non participation in the actual murders indicates parole should be granted at this time. I disagree with the Examiner to parole our subject at this time and believe a fifteen year reconsideration hearing is appropriate.

I believe that the file material in Furnari's case supports a finding by the preponderance of the evidence that, in rating the severity of his offense behavior and assessing his suitability for release on parole, that ~~the~~ he be held accountable for the murders of Lee Schliefer, the conspiracy to murder Richard Taglianetti and Frank Decicco. Mr. Schliefer was a prospective witness to provide testimony against the criminal activity of an organized crime organization of which Furnari was a high ranking official. Though he did not actually commit these acts himself, Furnari played an active role in the planning of these acts. The Commission has previously considered material that was presented by Furnari at the hearing. I believe the file information supports holding him accountable for the above criminal acts.

The examiner has cited Furnari's age and deteriorating health as bases for his parole recommendation. I believe that a parole grant at this time would minimize the seriousness of the offense and promote disrespect for the law. The subject's age and health issues do not mitigate the offense behavior. He is the type of offender who has others carry out acts of violence and, for that reason, continues to pose a risk to the community.

I recommend this case be designated as original jurisdiction.


**Recommendation:**  Continue to a fifteen year reconsideration hearing in October 2026.

**Conditions:**  None.

**Statutory Interim Hearing:** 10/2013

**Guideline Use:**  The Commission finds that a decision more than 48 months above the guideline minimum of 100 months is warranted based on the following pertinent case factors: You were a high-ranking member of an organized crime family and the Commission finds that you are responsible for the conspiracy to commit multiple murders (including those of Lee Schleifer, Richard Taglianetti and FrankDeCicco) and attempted murder (Abinanti) in furtherance of the criminal conspiracy. These crimes are aggravated by the fact that they were committed in furtherance of the aims of a criminal organization and that one of the victims was a prospective prosecution witness and another of the murders was a contract murder. The Commission recognizes your current age and health concerns. However, notwithstanding these factors, the Commission finds that a grant of parole at this time would minimize the seriousness of the offense and promote disrespect for the law.



EXHIBIT C



## ORIGINAL JURISDICTION DESIGNATION

**Commissioner Instructions:** *If the first Commissioner orders Original Jurisdiction voting or continues a previous Original Jurisdiction designation,* the Commissioner shall: (1) complete Part A; (2) vote on the disposition of the case; and (3) transfer the case to the other Commissioners for their votes on the disposition of the case.

*If the first Commissioner finds that the Original Jurisdiction designation is not warranted, or that a previous designation should be removed,* the Commissioner shall: (1) complete Part B; (2) vote on the disposition of the case; and (3) refer the case to the data technician if the Commissioner's vote ends the voting process, or to the other Commissioners for concurring votes on declassification and on the disposition of the case.

### PART A - DESIGNATION *(One Vote)*

DESIGNATE for Original Jurisdiction voting, or continue a previous designation, and refer the case to the other Commissioners.

Commissioner: _____     Date: __12-19-11__

### PART B – DISAPPROVAL/REMOVAL OF DESIGNATION

*(Disapproving a Case that Qualifies – One Vote)*

DO NOT DESIGNATE for Original Jurisdiction voting.

Commissioner: _____     Date: _____

*(Declassifying a Case currently Designated - Majority Vote Only)*

DECLASSIFY the case as Original Jurisdiction.

Commissioner: _____     Date: _____

Commissioner: _____     Date: _____

Commissioner: _____     Date: _____

Commissioner: _____     Date: _____



## U.S. DEPARTMENT OF JUSTICE
### U.S. Parole Commission

FURNARI, CHRISTOPHER          ORDER

19815-054      PR031230
15-YEAR REC  ALWALM
Week Beginning 10/24/2011          _____

Institution: _____

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action is hereby ordered:

*PAROLE EFFECTIVE 1/12/2012 AFTER SERVICE OF 302 MONTHS.*

*Mark Tanner 10/26/11*

Date: _____          _____

*Continue to a 15 year reconsideration hearing in October 2026*

Date: _____

_____
(Date Notice Sent)

National Appeals Board          _____
                                        (check)

Regional Commissioners          _____
                                        (check)

Full Commission          _____
                                        (check)

Parole Form H-6
December 2004



# EXHIBIT D

## FEDERAL 15-YEAR PREHEARING ASSESSMENT

**Offense of Conviction** - Racketeering, Racketeering Conspiracy, and Extortion

| | | | |
|---|---|---|---|
| **Name** | : Furnari, Christopher | **Institution** | : Allenwood FCI-Med |
| **Reg No** | : 19815-054 | **Sentences(s) Length/Type:** 100 years/4205A | |
| **Date of Birth** | : 4/30/1924 | **Parole Eligibility Date:** 11/15/1996 | |
| **Detainer** | : None | **2/3 rds Date:** 7/16/2053 | |
| **Date Dictated** | : 10/11/2012 | **Fines/Restitution/Court Assessment:** 240,000 | |
| | | **Reviewer** | : Mark A. Tanner |

Months in Custody 300  as of  11/13/2011

### I.  Present Offense:

This is an Original Jurisdiction case.

A.	Christopher Furnari was convicted by jury trial for the above sighted offenses and was sentenced on 1/13/87 to 100 years in prison.

B.	From 1970 to 1981, the subject was involved as a powerful member of the Lucchese organized crime family.  He was originally considered the consigliere of the family and as such from time to time, he represented the family in dealings with the "Commission"  The Commission was the ruling body of the five organized crime family's in New York City.  The Commission either gave direct or tacit approval for the murdered of Carmine Galante, Leonard Coppola, Gisseppi Turano.  The subject as a representative of the Lucchese crime family on the Commission, would either give direct or tacit approval for the murdered of the above individuals.

In short, Furnari was a Capo and Consigliere of the Lucchese Crime Family.  When he was consigliere, he was also a member of the "Commission", the national ruling body of the La Cosa Nostra, made up of various representatives of crime families.

The subject has been found by the Commission to have been directly involved in the planning or approval of murder and or attempted murder.   The murder of Lee Schleifer was a prospective informant/witness.  The conspiracy to murder and murder Richard Taglianetti was a contract murder.  The Commission also determined that there was sufficient corroboration of information provided by Casso so as to be able to rely on the information given by Casso, notwithstanding an affidavit from AUSA Stamboulidis that Casso later was thought to not be credible in that district.

There is a letter from AUSA David Kelly, Chief of the Organized Crime Unit which indicates that the Government has obtained new information since the convictions that the subject was a capo in the Lucchese crime family but did not sit on the Commission.  It also goes on to state that the subject was aware of the criminal activity committed by the Lucchese crime family.

During the subject's initial parole hearing, NOA ordered a 15 reconsideration hearing during 11/2011.

By NOA dated 7/8/05 the Commission ordered: No Changed in 15 year reconsideration date of 12/11. Retroactivity does not apply. SFS was 8 and Offense Severity Rating was 8.

The subject appealed the above decision. By NOA dated 11/23/05 the National Appeals Board affirmed the previous decision. The Commission provided a rather detailed explanation in support of its decision.

The Commission conducted SIH hearing in 2007 and 2009 and ordered no change in continue to 15 year reconsideration hearing in December 2011.

The subject applied for his 15 year reconsideration hearing on 8/16/11 and indicating Flora Edwards, Attorney would represent him.

C.  The offense behavior is rated as Category 8 severity because it involved conspiracy in Racketing to commit murders.

Codefendants:

1)Corallo, Anthony  08341-016:  100 year sentence.  By NOA dated 11/13/97, was continued to a 15 year reconsideration hearing.  His offense was rated as Category Eight because it involved murder.  His SFS was 4 and gls were 150+ months.  The NAB affirmed the decision on 04/18/98.  After an SIH, by NOA dated 10/19/99, there was no change in the previous decision.  The NAB affirmed on 01/06/00.  He died on 08/23/00 at FMCP Springfield.

2) Idelicato, Anthony  19706-054:  40 year sentence later modified to 20 years.  By NOA dated 04/29/92, was continued to expiration.  The offense behavior was rated as Category Eight, SFS 4 and gls 150+ months.  He was released via MR on 04/01/98.  He has been violated twice for violation of the association condition of supervision.  The subject is current in custody serving a new PLRA sentence of 240 months for Racketeering with a release date of 7/20/2023

3) Lamella, Gennaro  10405-054:  101 years, 9 months 30 days, aggregate sentence.  By NOA dated 06/27/96, was continued for a 15 year reconsideration hearing.  His offense was rated as category eight because it involved murder.  His SFS was 4 and gls were 150+ months.  In addition, he had new criminal conduct of assault, for rescission guidelines of 36-48 months, aggregate guidelines of 186+ months.  By OJ Appeal, the decision was affirmed on 12/04/96.  At an SIH in 2000, the decision was no change in previous decision.  The NAB affirmed on 08/10/00.  His last SIH was in 2005 and ordered no change; this was later affirmed on appeal.  NOA dated 9/2011 ordered, no change in 15 year reconsideration date of 7/2026.

4) Persico, Carmine:  74666-158:  100 year sentence.  He waived parole consideration.

5) Salerno, Anthony  12812-054:  100 year sentence.  Died at FMCP Springfield on 07/22/96.

6) Santoro, Salvatore:  19814-054:  100 year sentence.  By NOA dated 01/27/99, he was given a presumptive parole date of 11/13/01 after service of 180 months, based on his poor health.  He was 84 years of age and dying of cancer.  His offense was rated as Category Eight because it involved murder, SFS was 4 and guidelines were 150+ months.  He died on 01/25/00.

Scopo, Ralph  10402-054:  100 year sentence.  He died at USP Lewisburg on 03/09/93.

---

**III.    Victim Information:** There are no victims registered for notification in the victim witness program. However, there are victims to the subject's offenses and our VC was provided all information concerning the upcoming hearing to solicit comments from victim families.

**IV.    Salient Factor Score:**

A =  1    Subject has 3 convictions.

| | | |
|---|---|---|
| 5/23/40 | Theft | 9/10/40 – Probation (1-0) |
| 1/3/43 | Robbery | 4/14/43 – Probation (2-0) |
| 9/12/43 | Sodomy, Assault and Attempted Rape | 12/28/43 – 15 to 30 yrs (3-1) Paroled 10/21/53 |
| | | 10/19/62 – Revoked 4 yrs prison (3-2) |

B =  1    Subject has 2 commitments of more than 30 days that were imposed prior to the last overt act of the current offense.

C =  3    Subject was 45 years old at the commencement of the current offense.

D =  1    Date of offense: 1/1/1970

E =  1    Subject is not a violator

F =  1    Subject was 41 years of age or more at the commencement of the current offense.

     8    **Total Score**

**V.    The guideline range is 100+ months.**

**VI.    Other Significant Prior Record/Stability Factors:** None

**VII.    Form USA-792, AO-235, AO-337:** N/A

**VIII.    Parole On The Record:** No

**IX.    Evaluation:**

Education Data Sheet:

| | | | | | | |
|---|---|---|---|---|---|---|
| ALM | CLASSIC MOVIE ACE CLASS | 08-08-2006 | 09-27-2006 | P C P | 14 |
| ALM | CLASSIC MOVIE ACE CLASS | 04-25-2006 | 06-29-2006 | P C P | 16 |
| ALM | CLASSIC MOVIE ACE CLASS | 01-10-2006 | 03-08-2006 | P C P | 18 |
| ALM | CLASSIC MOVIE ACE CLASS | 09-27-2005 | 12-07-2005 | P C P | 18 |
| ALM | CLASSIC MOVIE ACE CLASS | 06-07-2005 | 08-19-2005 | P C P | 18 |
| ALM | CLASSIC MOVIE ACE CLASS | 02-15-2005 | 04-20-2005 | P C P | 20 |
| ALM | CLASSIC MOVIE ACE CLASS | 10-13-2004 | 12-23-2004 | P C P | 22 |
| ALM | CLASSIC MOVIES ACE CLASS | 06-04-2003 | 07-30-2003 | P C P | 22 |
| ALM | CLASSIC MOVIES ACE CLASS | 01-30-2003 | 03-28-2003 | P C P | 22 |
| ALM | CLASSIC MOVIES ACE CLASS | 10-25-2002 | 12-12-2002 | P C P | 16 |

Furnari 19815-054

| | | | | | | |
|---|---|---|---|---|---|---|
| ALM | A.C.E. CONSTRUCTION ESTIMATING | 06-30-1999 08-25-1999 | P | C | P | 22 |
| ALM | A.C.E. CONSTRUCTION ESTIMATING | 10-22-1998 12-23-1998 | P | C | P | 22 |
| ALM | CLASSICAL FILMS ACE CLASS | 02-04-1997 04-07-1997 | P | C | P | 22 |
| ALM | WORLD WAR I HISTORY | 09-23-1996 11-22-1996 | P | C | P | 24 |
| ALM | NORTH AMERICAN GEOGRAPHY | 09-23-1996 11-22-1996 | P | C | P | 24 |
| ALM | CLASSICAL FILMS ACE CLASS | 09-16-1996 11-22-1996 | P | C | P | 24 |
| ALM | ACE BUSINESS DISCUSSION CLASS | 05-19-1996 07-09-1996 | P | C | P | 20 |
| ALM | BUSINESS  (ACE-EVE/BEG CLASS) | 01-30-1996 04-16-1996 | P | C | P | 12 |
| ALM | ASTRONOMY (ACE) | 02-14-1996 03-28-1996 | P | C | P | 22 |
| OXF | GED | 08-31-1987 08-04-1993 | P | W | V | 240 |

Christopher Furnari is an 87 year old male offender appearing before the Commission for a 15 year reconsideration hearing.  He was the Capo of a Lucchese crime family crew which were involved in murders, extortion and racketeering.  There is a letter from AUSA David Kelley dated 12/11/96 detailing the subject's involvement in nefarious activity including several murders.

The subject has maintained clear conduct since incarceration and done some programming but never completed his GED.  The subject is currently working on the Correctional Services crew but there is no indication of the quality of his work.  His release residence according to his progress report is as follows:

Tomasina Furnari – wife
214 Siecher St
Staten Island, NY  10312

During the last hearing, the subject indicated his had many medical programs...which are expected of someone 87 years old.  The subject has filed appeals to each parole commission action and most recently in 2010, the NAB Affirmed the previous decision...see attached NAB Order.

MAT
October 11, 2011





DEC 04 '95  04:11PM USDO SDNY

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 4, 1995

By Facsimile
David Breitbart, Esq.
52 Duane Street 7th Floor
New York, New York 10007

Re:  <u>United States v. Christopher Furnari</u>
S3 85 Cr. 139(RO)

Dear Mr. Breitbart:

This letter is submitted in response to your request that the Government correct information that appeared in Furnari's presentence report ("PSR"). Having the benefit of cooperating witnesses who are familiar with Furnari and his criminal activities, and who began to cooperate several years after Furnari's conviction, the Government hereby agrees to the correction and clarification of certain information contained in the PSR.

Specifically, you have objected to references in the PSR that describe Furnari as serving as consigliere of the Luchese Family "since at least the late-1970's," and suggest that his position on the Commission as Luchese consigliere, Furnari implicitly approved of the 1979 murders of Carmine Galente, Leonard Coppola, and Giuseppi Turrano. <u>See</u> PSR at 20, 28-29. We have since learned however, that Furnari was only a capo in the Luchese Family until the early eighties, and consequently, could not have sat on the Commission at the time of the Galente homicide.

As you know, in September 1991 Alfonso D'Arco, a longtime member of the Luchese Family who also had served as capo and acting boss, began to cooperate with the Government. In his proffers to the Government and in his trial testimony, D'Arco has identified Furnari as a Luchese capo in the late seventies and early eighties, who did not become a consigliere until the early eighties. Thus, from information received after Furnari's conviction in the above-captioned matter, we now believe that Furnari was only a capo, and not a Luchese representative on the Commission at the time of the Galente homicide.

However, this does not change our view of Furnari's character, nor does it diminish the danger he posed as a participant in a violent criminal enterprise. Through the many

years that Furnari was an associate and high-ranking member of the Luchese Family, Furnari was well aware of -- and indeed accepted as a way of life -- the Commission's role in La Cosa Nostra, and its power to order murders.  With full knowledge of the Commission's role in sanctioning murders, Furnari willingly accepted his appointment to Luchese Family consigliere, and as such participated with other members of the Luchese hierarchy in Commission affairs, albeit sometime after the Galente homicide.

In view of D'Arco's information, we agree, with leave of the Court, that the PSR should be amended by annexing to it a copy of this letter.  In addition, a copy of this letter will be forwarded to the United States Parole Commission.  If you have any objection, please let me know.

Very truly yours,

MARY JO WHITE
United States Attorney

By: _____
    DAVID N. KELLEY
    Chief, Organized Crime Unit
    Tel.: (212) 791-1131

cc:   Joseph Veltre, USPO



# FEDERAL 15-YEAR PREHEARING ASSESSMENT

**Offense of Conviction** - Racketeering, Racketeering Conspiracy, and Extortion

| | | | |
|---|---|---|---|
| **Name** | : Furnari, Christopher | **Institution** | : Allenwood FCI-Med |
| **Reg No** | : 19815-054 | **Sentences(s) Length/Type:** 100 years/4205A | |
| **Date of Birth** | : 4/30/1924 | **Parole Eligibility Date:** 11/15/1996 | |
| **Detainer** | : None | **2/3 rds Date:** 7/16/2053 | |
| **Date Dictated** | : 10/11/2012 | **Fines/Restitution/Court Assessment:** 240,000 | |
| | | **Reviewer** | : Mark A. Tanner |

Months in Custody 300 as of 11/13/2011

## I. Present Offense:

This is an Original Jurisdiction case.

A.      Christopher Furnari was convicted by jury trial for the above sighted offenses and was sentenced on 1/13/87 to 100 years in prison.

B.      From 1970 to 1981, the subject was involved as a powerful member of the Lucchese organized crime family. He was originally considered the consigliere of the family and as such from time to time, he represented the family in dealings with the "Commission" The Commission was the ruling body of the five organized crime family's in New York City. The Commission either gave direct or tacit approval for the murdered of Carmine Galante, Leonard Coppola, Gisseppi Turano. The subject as a representative of the Lucchese crime family on the Commission, would either give direct or tacit approval for the murdered of the above individuals.

In short, Furnari was a Capo and Consigliere of the Lucchese Crime Family. When he was consigliere, he was also a member of the "Commission", the national ruling body of the La Cosa Nostra, made up of various representatives of crime families.

The subject has been found by the Commission to have been directly involved in the planning or approval of murder and or attempted murder. The murder of Lee Schleifer was a prospective informant/witness. The conspiracy to murder and murder Richard Taglianetti was a contract murder. The Commission also determined that there was sufficient corroboration of information provided by Casso so as to be able to rely on the information given by Casso, notwithstanding an affidavit from AUSA Stamboulidis that Casso later was thought to not be credible in that district.

There is a letter from AUSA David Kelly, Chief of the Organized Crime Unit which indicates that the Government has obtained new information since the convictions that the subject was a capo in the Lucchese crime family but did not sit on the Commission. It also goes on to state that the subject was aware of the criminal activity committed by the Lucchese crime family.

During the subject's initial parole hearing, NOA ordered a 15 reconsideration hearing during 11/2011.

---

By NOA dated 7/8/05 the Commission ordered: No Changed in 15 year reconsideration date of 12/11. Retroactivity does not apply. SFS was 8 and Offense Severity Rating was 8.

The subject appealed the above decision. By NOA dated 11/23/05 the National Appeals Board affirmed the previous decision. The Commission provided a rather detailed explanation in support of its decision.

The Commission conducted SIH hearing in 2007 and 2009 and ordered no change in continue to 15 year reconsideration hearing in December 2011.

The subject applied for his 15 year reconsideration hearing on 8/16/11 and indicating Flora Edwards, Attorney would represent him.

C. The offense behavior is rated as Category 8 severity because it involved conspiracy in Racketing to commit murders.

Codefendants:

1)Corallo, Anthony  08341-016:  100 year sentence. By NOA dated 11/13/97, was continued to a 15 year reconsideration hearing. His offense was rated as Category Eight because it involved murder. His SFS was 4 and gls were 150+ months. The NAB affirmed the decision on 04/18/98. After an SIH, by NOA dated 10/19/99, there was no change in the previous decision. The NAB affirmed on 01/06/00. He died on 08/23/00 at FMCP Springfield.

2) Idelicato, Anthony  19706-054:  40 year sentence later modified to 20 years. By NOA dated 04/29/92,was continued to expiration. The offense behavior was rated as Category Eight, SFS 4 and gls 150+ months. He was released via MR on 04/01/98. He has been violated twice for violation of the association condition of supervision. The subject is current in custody serving a new PLRA sentence of 240 months for Racketeering with a release date of 7/20/2023

3) Lamella, Gennaro  10405-054:  101 years, 9 months 30 days, aggregate sentence. By NOA dated 06/27/96, was continued for a 15 year reconsideration hearing. His offense was rated as category eight because it involved murder. His SFS was 4 and gls were 150+ months. In addition, he had new criminal conduct of assault, for rescission guidelines of 36-48 months, aggregate guidelines of 186+ months. By OJ Appeal, the decision was affirmed on 12/04/96. At an SIH in 2000, the decision was no change in previous decision. The NAB affirmed on 08/10/00. His last SIH was in 2005 and ordered no change; this was later affirmed on appeal. NOA dated 9/2011 ordered, no change in 15 year reconsideration date of 7/2026.

4) Persico, Carmine:  74666-158: 100 year sentence. He waived parole consideration.

5) Salerno, Anthony  12812-054:  100 year sentence. Died at FMCP Springfield on 07/22/96.

6) Santoro, Salvatore:  19814-054:  100 year sentence. By NOA dated 01/27/99, he was given a presumptive parole date of 11/13/01 after service of 180 months, based on his poor health. He was 84 years of age and dying of cancer. His offense was rated as Category Eight because it involved murder, SFS was 4 and guidelines were 150+ months. He died on 01/25/00.

Scopo, Ralph  10402-054:  100 year sentence. He died at USP Lewisburg on 03/09/93.

**III.** **Victim Information:** There are no victims registered for notification in the victim witness program. However, there are victims to the subject's offenses and our VC was provided all information concerning the upcoming hearing to solicit comments from victim families.

**IV.** **Salient Factor Score:**

$A = 1$    Subject has 3 convictions.

| | | |
|---|---|---|
| 5/23/40 | Theft | 9/10/40 – Probation (1-0) |
| 1/3/43 | Robbery | 4/14/43 – Probation (2-0) |
| 9/12/43 | Sodomy, Assault and Attempted Rape | 12/28/43 – 15 to 30 yrs (3-1) Paroled 10/21/53 |
| | | 10/19/62 – Revoked 4 yrs prison (3-2) |

$B = 1$    Subject has 2 commitments of more than 30 days that were imposed prior to the last overt act of the current offense.

$C = 3$    Subject was 45 years old at the commencement of the current offense.

$D = 1$    Date of offense· 1/1/1970

$E = 1$    Subject is not a violator

$F = 1$    Subject was 41 years of age or more at the commencement of the current offense.

   **8**   **Total Score**

**V.**    The guideline range is 100+ months.

**VI.**    **Other Significant Prior Record/Stability Factors:** None

**VII.**    **Form USA-792, AO-235, AO-337:** N/A

**VIII.**    **Parole On The Record:** No

**IX.**    **Evaluation:**

Education Data Sheet:

| | | | | |
|---|---|---|---|---|
| ALM | CLASSIC MOVIE ACE CLASS | 08-08-2006 09-27-2006 | P C P | 14 |
| ALM | CLASSIC MOVIE ACE CLASS | 04-25-2006 06-29-2006 | P C P | 16 |
| ALM | CLASSIC MOVIE ACE CLASS | 01-10-2006 03-08-2006 | P C P | 18 |
| ALM | CLASSIC MOVIE ACE CLASS | 09-27-2005 12-07-2005 | P C P | 22 |
| ALM | CLASSIC MOVIE ACE CLASS | 06-07-2005 08-19-2005 | P C P | 18 |
| ALM | CLASSIC MOVIE ACE CLASS | 02-15-2005 04-20-2005 | P C P | 20 |
| ALM | CLASSIC MOVIE ACE CLASS | 10-13-2004 12-23-2004 | P C P | 22 |
| ALM | CLASSIC MOVIES ACE CLASS | 06-04-2003 07-30-2003 | P C P | 22 |
| ALM | CLASSIC MOVIES ACE CLASS | 01-30-2003 03-28-2003 | P C P | 22 |
| ALM | CLASSIC MOVIES ACE CLASS | 10-25-2002 12-12-2002 | P C P | 16 |

| | | | | | | |
|---|---|---|---|---|---|---|
| ALM | A.C.E. CONSTRUCTION ESTIMATING | 06-30-1999 | 08-25-1999 | P C P | 22 |
| ALM | A.C.E. CONSTRUCTION ESTIMATING | 10-22-1998 | 12-23-1998 | P C P | 22 |
| ALM | CLASSICAL FILMS ACE CLASS | 02-04-1997 | 04-07-1997 | P C P | 22 |
| ALM | WORLD WAR I HISTORY | 09-23-1996 | 11-22-1996 | P C P | 24 |
| ALM | NORTH AMERICAN GEOGRAPHY | 09-23-1996 | 11-22-1996 | P C P | 24 |
| ALM | CLASSICAL FILMS ACE CLASS | 09-16-1996 | 11-22-1996 | P C P | 24 |
| ALM | ACE BUSINESS DISCUSSION CLASS | 05-19-1996 | 07-09-1996 | P C P | 20 |
| ALM | BUSINESS  (ACE-EVE/BEG CLASS) | 01-30-1996 | 04-16-1996 | P C P | 12 |
| ALM | ASTRONOMY (ACE) | 02-14-1996 | 03-28-1996 | P C P | 22 |
| OXF | GED | 08-31-1987 | 08-04-1993 | P W V | 240 |

Christopher Furnari is an 87 year old male offender appearing before the Commission for a 15 year reconsideration hearing.  He was the Capo of a Lucchese crime family crew which were involved in murders, extortion and racketeering.  There is a letter from AUSA David Kelley dated 12/11/96 detailing the subject's involvement in nefarious activity including several murders.

The subject has maintained clear conduct since incarceration and done some programming but never completed his GED.  The subject is currently working on the Correctional Services crew but there is no indication of the quality of his work.  His release residence according to his progress report is as follows:

Tomasina Furnari – wife
214 Siecher St
Staten Island, NY  10312

During the last hearing, the subject indicated his had many medical programs…which are expected of someone 87 years old.  The subject has filed appeals to each parole commission action and most recently in 2010, the NAB Affirmed the previous decision…see attached NAB Order.

MAT
October 11, 2011