PJS:MAS:all

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER FURNARI,** | : | **Civ. No. 3:CV-12-2378** |
| **Petitioner** | : | |
| | : | **(Nealon, J.)** |
| **v.** | : | |
| | : | |
| **UNITED STATES PAROLE COMMISSION,** | : | |
| **and WARDEN, Federal Correctional** | : | |
| **Institution at Allenwood, Pennsylvania,** | : | |
| **Respondent** | : | **Filed Electronically** |

## RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

This is a habeas corpus matter brought pursuant to 28 U.S.C. § 2241 by and through counsel for Christopher Furnari, a federal prisoner who is currently confined in the Allenwood Federal Correctional Institution in White Deer, Pennsylvania (FCI Allenwood.)    Furnari names the United States Parole Commission (Parole Commission) and the Warden of FCI Allenwood as Respondents.[1]  Petition (Doc. 1) at 1.  Furnari claims that the Parole Commission's

---

[1] Pursuant to 28 U.S.C. § 2243, "[t]he writ, or order to show cause shall be directed to the person having custody of the person detained."   "These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge...."  Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004).  Thus, for purposes of a habeas action, the petitioner's custodian is the warden of the institution where the petitioner is being held.  Id. at 442.  In the instant case, therefore, the only appropriate respondent is the Warden of FCI Allenwood, where

determination that paroling him would depreciate the seriousness of the offense and promote disrespect for the law is arbitrary and capricious and lacks a rational basis; that the Parole Commission's finding that he presents a danger to the public is arbitrary and capricious and lacks a rational basis; and that denial of parole in light of his medical condition was arbitrary and capricious and amounted to cruel and unusual punishment.  Id. at 2-3.  As explained below, the habeas petition should be denied because his claims are without merit.

## I.  Procedural History

On November 27, 2012, Furnari filed the Petition for Writ of Habeas Corpus.  On December 11, 2012, the Court issued an Order directing Respondent to show cause why Furnari should not receive the relief he seeks.  On December 31, 2012, Respondent filed a motion for an enlargement of time until January 22, 2013 in which to respond to Furnari's habeas petition.  Respondent's motion was granted by Order dated January 4, 2013.  Respondent submits this response to the Petition for Writ of Habeas Corpus.

## II.  Statement of the Case

Furnari has previously litigated the Parole Commission's execution of his sentence.  In Judge Muir's order in Furnari's most recent petition, Judge Muir set

Furnari is currently incarcerated.  As such, the Warden of FCI Allenwood should be substituted as the sole respondent in this case.

out the complex procedural history in this case.  See Furnari v. U.S. Parole Commission, Civ. No. 4: CV-06-0342, 2007 WL 1804340 (M.D. Pa. June 20, 2007) (Muir, J.) (copy attached).  Because the parole hearing conducted in 2012 was a de novo hearing and is the decision under appeal, the instant response begins with that hearing.

Furnari is serving a 100-year sentence for racketeering, extortion, and racketeering conspiracy imposed by the United States District Court for the Southern District of New York on January 13, 1987.  Id. at *1.  "According to the United States Court of Appeals for the Second Circuit, Furnari was the 'consigliere' (counselor) of the Lucchese crime family, a position identified as "'practically the equivalent of the underboss.'"  Id. (quoting  United States v. Salerno, 868 F.2d 524, 543 (2d Cir. 1989) (direct appeal of Furnari's conviction). "Furnari's conviction grew out of his participation in 'the Commission,' a national ruling body of La Cosa Nostra (Mafia) in the United States, the activities of which included the extortion and other racketeering acts which underlie his conviction." Id.

In New York, at the time of the conviction, there were five La Cosa Nostra (LCN) families -- Genovese, Gambino, Lucchese, Colombo and Bonanno -- the

activities of which were coordinated by "the Commission."[1]   Salerno, 868 F.2d at 528.   Each LCN family was run by a "boss" with the assistance of two deputies known as an "underboss" and "consigliere," and beneath these are "capos" and associates who commit crimes and share their criminal proceeds with the family leadership.  Id.

The Parole Commission conducted an initial parole hearing for Furnari on December 3, 1996.  Furnari v. U.S. Parole Com'n, 2007 WL 1804340 at *1.  The examiner recommended that Furnari be required to serve to a 15-year reconsideration hearing in December, 2011, finding that release of Furnari on parole earlier would depreciate the seriousness of the offense and promote disrespect for the criminal justice system.  Id.; see 18 U.S.C. §4206(a).

The Regional Parole Commissioner adopted this recommendation and Furnari was informed by notice of action dated January 8, 1997.  Notice of Action

---

[1]  For the sake of clarity, references to the LCN Commission will take the form "the Commission," and references to the United States Parole Commission will take the form "Parole Commission."

(Ex. 1.)   The National Appeals Board affirmed this decision on administrative

appeal.  Notice of Action on Appeal (Ex. 2) at 1.[2]

---

[2] The Board found that:

> You have properly been held accountable for murders committed to further the purposes of the Lucchese or other crime families.  At a minimum, as the capo of a crew in the Lucchese family, you were in a position to be informed of murders ordered by the boss of the family.   Given the hierarchical nature of the organization, it is likely that you directed the murderous acts of your crew members.  And, in fact, the Parole Commission finds the information from the U.S. Attorney's Office on your personal responsibility for several of the murders (victims Schliefer, Taglianetti, and DeCicco) and attempted murder (victim Abinanti) to be credible and reliable, even though much of the information may have come from Anthony Casso, one of the most violent members of your organization.  Reliable information on crimes committed through La Costra Nostra activities has been provided by members of the criminal organization, including those who have committed violent crimes.  Even if Casso has continued to commit or plot other crimes after his debriefing by federal law enforcement, this does not disqualify him as a reliable source concerning your criminal activities within the Lucchese family.  In many cases, Casso's information is corroborated by information from other sources such as Carew and D'Arco.

> Your parole denial is warranted because you approved or participated in the planning of a contract murder (Taglianetti), the murder of a potential informant/witness (Schleifer), and a murder and attempted murder to further the aims of an on-going criminal organization (DeCicco and Abinanti, respectively).  Any one of these crimes would support a parole denial.  There are no mitigating circumstances, including your age, that justify your parole when weighed against the aggravated nature of the crimes.

Id.

The Parole Commission conducted the 15-year reconsideration hearing, which is, under USPC rules, a de novo hearing, on October 26, 2011. Hearing Summary (Ex. 3.)  At that hearing, the hearing examiner recommended that Furnari be paroled on January 12, 2012, after service of 302 months. Id.  His reason for this recommendation was based on Furnari's age (87 years) and medical condition and the fact that he was not a direct participant in the murders for which the Commission has held him responsible. Id. at 1-2.  A second, reviewing examiner disagreed with this recommendation. Id. at 3.  He recommended denial of parole and continuance to a 15-year reconsideration hearing in October, 2026. Id.  The third examiner agreed with the second and a recommendation to deny parole was sent to the Parole Commissioners. Id.

The case was designated as "original jurisdiction" under the Commission's rules (28 C.F.R. § 2.17), i.e., it would be voted by all members of the Parole Commission, rather than by a "regional Commissioner," as in the ordinary case. Notice of Action (Ex. 4.)  All members of the Parole Commission voted to deny parole and continue the case to a fifteen year reconsideration hearing in October, 2026, for the following reasons:

> Your offense behavior has been rated as Category Eight severity because it involved Murder, Conspiracy to Commit Murder, and Multiple Acts of Extortion through Racketeering offenses.  Your salient factor score is 8. . . .

6

You have been in federal confinement as a result of your behavior to a total of 300 months as of 11/13/2011.  Guidelines established by the Commission for the above offense behavior indicate a range of 100+ months to be served before release for cases with good institutional adjustment and program achievement.  After review of all relevant factors and information presented, a decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating case factors: You were a high-ranking member of an organized crime family and the [Parole] Commission finds that you are responsible for the conspiracy to commit multiple murders (including those of Lee Schleifer, Richard Taglianetti and Frank DeCicco) and attempted murder (Abinanti) in furtherance of the criminal conspiracy.  These crimes are aggravated by the fact that they were committed in furtherance of the aims of a criminal organization and that one of the victims was a prospective prosecution witness and another of the murders was a contract murder.  The Commission recognizes your current age and health problems.  However, notwithstanding these factors, the Commission finds that a grant of parole at this time would minimize the seriousness of the offense and promote disrespect for the law.

Id.

Furnari filed a petition for reconsideration (analogue to an administrative appeal for original jurisdiction cases) with the Parole Commission.  Notice of Action on Appeal (Ex. 5); see 28 C.F.R. § 2.27.  The Parole Commission affirmed the previous decision (*i.e.*, denied the petition for reconsideration), for the following reasons:

Your first claim in support of your petition for reconsideration is that your age and health [condition] present compelling reasons for a more lenient decision.  The National Appeals Board disagrees.  Even though your physical condition may limit your ability to commit further crimes yourself,

7

your past shows that you were able to work in concert with others who committed serious offenses on your behalf.

You next claim that the Commission lacked a rational basis for its conclusion that to grant you parole would depreciate the seriousness of your offense conduct and promote disrespect for the law.  The National Appeals Board finds that there are no compelling circumstances in mitigation and that there was a rational basis for the Commission's decision contained in its statement of reasons.

As to your complaint about the length of your sentence, it is the result of a wide range of criminal conduct conducted in multiple convictions and sentences.  The length of your sentences has been properly considered by the federal courts and found to not be disparate or unconstitutional.  Although you provide a list of persons who received shorter sentenced than you did, you have not shown that their criminal records, their backgrounds and characteristics, and the circumstances of their offenses are the same as yours. The parole decisions considers a combination of information related to the offender and the offense, not just a mechanical formula based on the title of the offense.

Finally, you claim that to order a reconsideration hearing 13 years after the Commission is currently set to expire violated 18 U.S.C. § 4206.  Congress has repeatedly extended the Commission's existence and the "winding up" period.  You will continue to receive interim hearings, and, if Congress decides to let the Commission sunset before your scheduled reconsideration hearing, according to § 235(b)(3) of the Sentencing Reform Act, the Commission will act before it is actually abolished to set a release date for you.  Thus, there is no merit to your claim.

Id. at 1.

## III.  **Question Presented**

Should the habeas petition be denied because Furnari's arguments that decisions of the Parole Commission were arbitrary and capricious,

8

lacked a rational basis, and/or amounted to cruel and unusual punishment are without merit?

Suggested Answers: Affirmative.

## IV. <u>Argument</u>

I. **FURNARI'S CLAIM THAT THE COMMISSION'S FINDING THAT PAROLING HIM WOULD DEPRECIATE THE SERIOUSNESS OF HIS OFFENSE AND PROMOTE DISRESPECT FOR THE LAW WAS ARBITRARY AND CAPRICIOUS IS WITHOUT MERIT.**

As Judge Muir stated in deciding Furnari's 2006 habeas petition:

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7 (1979). To the extent that any liberty interest exists, it must be created by the applicable parole statute. <u>Id</u>. Furthermore, even if a liberty interest exists, due process only requires that a hearing be provided, and that the prisoner be given a statement of reasons for denial of parole, if parole is denied. <u>Board of Pardons v. Allen</u>, 482 U.S. 369 (1987).

As to a parole decision rendered by the [Parole] Commission, it is well settled that the determination of eligibility for parole has been committed by Congress to the discretion of the Commission. <u>United States vs. Addonizio</u>, 442 U.S. 178 (1979); <u>Campbell vs. United States Parole Comm'n</u>, 704 F.2d 106 (3d Cir. 1983). The function of judicial review of a [Parole] Commission decision on a petition for writ of habeas corpus is to determine whether the Commission abused its discretion. The Court is not empowered to substitute its judgment for that of the Commission in evaluating habeas petitioner's claims unless the Commission's exercise of discretion represents an egregious departure from rational decision-making. <u>See</u> <u>Butler vs. United States Parole Comm'n</u>, 570 F. Supp. 67-77 (M.D. Pa. 1983).

The Court of Appeals for the Third Circuit has routinely recognized that a federal court's review of a decision issued by the Parole Commission is limited. Furnari v. Warden, 218 F.3d 250, 254 (3d Cir. 2000).  The standard applied in such a review "'is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" Id.  (quoting Zannino vs. Arnold, 531 F.2d 687, 691 (3d Cir. 1976).   However, the review should consider whether the Commission 'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.'"  Id. (quoting Zannino, 531 F.2d at 690);Furnari v. United States Parole Comm'n, 2007 WL 1804340 at *10.

Furnari's claim is that the Parole Commission acted arbitrarily by denying him parole based on the statutory criteria: its finding that paroling him would depreciate the seriousness of his offense and promote disrespect for the law.  See 18 U.S.C. § 4206(a).   What Furnari has overlooked is that the Parole Commission's denial of parole in his case was based on "aggravating case factors,"

which it listed as: 1) he was a high-ranking member of an organized crime family; 2) he was criminally liable for conspiracy to commit at least three murders and one attempted murder; 3) these crimes were aggravated because committed in furtherance of a criminal conspiracy; 4) one murder was aggravated because the victim was a prospective prosecution witness (*i.e.*, the crime was committed to silence a witness); and 5) another murder was aggravated because it was a contract murder.  Notice of Action (Ex. 4.)  The Notice of Action shows that the Parole Commission weighed these aggravating factors against Furnari's advanced age and health issues and concluded that a grant of parole would "minimize the seriousness of the offense and promote disrespect for the law."  Id.

Furnari's tactic is to list other persons who were convicted of organized criminal activity and received shorter sentences than he did, alleging that this demonstrates that a shorter term of imprisonment does not minimize the seriousness of his offense.  But Furnari has not pointed to any legal basis for this approach; no statute requires the Parole Commission to take into account the sentencing decisions of other courts in other cases when making parole decisions.  See 18 U.S.C. § 4201-4218.  Furnari has cited no case law for the proposition that sentencing decisions made by courts sentencing defendants in other cases must be

considered by the Parole Commission in making parole decisions.   And the caselaw is well-settled that the Parole Commission has the authority and discretion to render different parole decisions even for codefendants in the same case.   A lenient decision for one offender (whether correctly or incorrectly made on its own merits) simply does not create an enforceable right to a similarly lenient decision for his codefendant either in sentencing, Entrekin v. United States, 508 F.2d 1328, 1330 (8th Cir. 1977) (finding that the petitioner's claim that he wrongly received a more severe sentence than that received by his wife, a co-defendant, is not congnizable under 2255); Randall v. United States, 324 F.2d 726, 727 (10th Cir. 1963) ("circumstances affecting one defendant often justify a different sentence than that imposed on a codefendant."); or in parole, Lynch v. United States Parole Comm'n, 768 F.2d 491, 497-98 (2d Cir. 1985) (finding that Parole Commission regulations do not require consideration of the parole status of codefendants.); Augustine v. Brewer, 821 F.2d 365, 372 (7th Cir. 1987) (finding that the "petitioner possesses no constitutional right to a parole release date identical to that of a co-defendant.") (citation omitted); Bush v. Kerr, 554 F.Supp. 726, 734 (W.D. Wis. 1982), aff'd, 738 F.2d 441 (8th Cir. 1984) ("nothing in the concept of due process requires petitioner's release when his co-defendant is released."); Hodges

v. O'Brien, 589 F. Supp. 1225, 1230-31 (D. Kan. 1984) (finding that the Parole Commission is not required to "avoid or explain disparity in parole treatment among co-defendants" and should base its decision "on the individual case, considering co-defendant disparity only in general."); Baker v. McCall, 543 F. Supp. 498, 501 (S.D.N.Y. 1981) ("the Court cannot regard the differing treatment of co-defendants as a reliable indication of inequitable treatment for the prisoner.") (citation omitted).  Furnari has no legal entitlement to receive the same parole decision as his co-defendants, and even less entitlement to be paroled because courts in unrelated cases imposed shorter sentences than he received.  See Lynch, supra; Paris v. Whalen, 666 F. Supp. 715, 718 (M.D. Pa. 1987) (the petitioner "is not entitled to be treated in the same manner as his co-defendant.") (citing Lynch, 768 F.2d at 491)).

## II. PETITIONER'S CLAIM THAT "DENIAL OF PAROLE BASED SOLELY ON CIRCUMSTANCES OF THE COMMITMENT OFFENSE IS UNSUPPORTED BY SOME EVIDENCE AND IS ARBITRARY" IS ALSO MERITLESS.

First, all of the cases Furnari relies upon for this proposition are cases interpreting the scope of the California state parole statute, which is not the statute applicable to his case. Second, the cases cited by Furnari concern whether the California paroling authority can deny parole based on a finding that the prisoner

13

poses a risk to public safety, relying only on the circumstances of the offense of conviction.   See Pet (Doc. 1) at 22.   However, in this case, the Parole Commission's denial of Furnari's parole was not based on a finding that he poses a risk to public safety, but rather that his crime had extremely aggravating features, and that in light of these aggravating factors, release on parole would depreciate the seriousness of his offense and promote disrespect for the law.   In short, the cases relied upon by Furnari are inapposite both because they deal with California parole statute, not the federal parole statute applicable in his case, and because they deal with parole denials based on risk to the public, and the Parole Commission's denial of parole in Furnari's case was not based on risk.

Furthermore, in one of the cases cited by Petitioner, Nix v. Hartley, the court explicitly states that "the Ninth Circuit has never held that, as a matter of clearly established Supreme Court law, due process is violated by the Board's or the Governor's continued reliance on the unchanging circumstances of the commitment offense to deny parole."   Nix v. Hartley, Civ. No. 07-1435-DOC, 2009 WL 3055398, slip op. at *5 (C.D. Cal. Sep. 24, 2009) (Carter, J.) (copy attached).   In other words, the cases do not stand for the proposition for which they are cited: that "denial of parole based solely on circumstances of the commitment

offense is unsupported by some evidence and is arbitrary." Pet. (Doc. 1) at 22. Rather, they address whether, under California law that "mandates that a parole release date be set unless the panel determines that 'the gravity of the current convicted offense or offenses, or the timing and gravity of the current or past convicted offense or offenses, is such that consideration of public safety requires a more lengthy period of incarceration'" authorities may rely on the circumstances of the offense to find risk. But under the federal parole statute, risk is not the only reason parole may be denied. See 18 U.S.C. § 4206(a). In addition, Furnari's parole was not denied based on a finding of risk. So the cited cases are inapplicable.

## III. FINALLY, PETITIONER'S CLAIM THAT THE COMMISSION'S DENIAL OF PAROLE NOTWITHSTANDING HIS AGE AND MEDICAL CONDITION WAS ARBITRARY AND CAPRICIOUS, AND CRUEL AND UNUSUAL, IS ALSO WITHOUT MERIT.

Furnari relies on two cases: Adams v. Schwartz, Civ. No. S-05-2237, 2008 WL 4224561 (E.D. Cal., 2008), and Fernandez v. United States, 941 F.2d 1488 (11th Cir. 1991). Furnari summarizes Adams as standing for the point that "denial of parole after 14 years in prison had no rational basis where prisoner, a 69 year old diabetic suffered from hypertension, chronic hepatitis C viral infection, bilateral lower extremity venous insufficiency and had a history of good conduct."

15

Pet. (Doc. 1) at 25.  Respondent disagrees with this summary of the holding of

Adams.  First, Adams is again a case interpreting California state parole law, not

the federal parole statute.  Second, the issue in Adams was whether the decision of

a panel of the California parole board that rescinded a previously-granted parole

date was supported by a rational basis.  The court held that "the rescission of

parole was not supported by 'some evidence'" and that, as the California Supreme

Court had articulated the "some evidence" standard with regard to state courts

reviewing denial of California parole to require a showing that the inmate "poses a

current threat to public safety," there was not evidence that Adams currently posed

such a threat.  Id. at 11-12.  Adams is not relevant to Furnari's case because it is

interpreting California state law. It does not stand for the general proposition that

poor health and age create any entitlement to release on federal parole.

Furnari summarizes Fernandez as "court denied jurisdiction but

recommended earliest possible parole based on defendant's medical condition."

Pet. (Doc. 1) at 25.  In fact, in Fernandez it was a district court in a prior

proceeding, not the court issuing the Eleventh Circuit opinion, that in 1989 granted

"no direct relief" to a Rule 35(b) motion, but "recommended that (1) the Parole

Commission release Fernandez at the earliest possible date under appropriate

restricted conditions . . ..".[2]   Fernandez, 941 F.2d at 1490.  The Eleventh Circuit,

reviewing on appeal a different collateral attack on his sentence filed by Fernandez

under 28 U.S.C. § 2255, held that it lacked jurisdiction to consider his claims,

which had to be brought in a different jurisdiction under § 2241. The Court of

Appeals made no recommendations to the Parole Commission regarding when or

whether Fernandez should be paroled.  Id. at 1494.

Furnari has made no argument with regard to his claim that denial of parole

was "cruel and unusual."   Nonetheless, the Eighth Amendment is, in general, a

prohibition on the imposition of punishment that is grossly disproportionate to the

severity of the crime.  See Gregg v. Georgia, 428 U.S. 153, 154 (1976);  Solem v.

Helm, 463 U.S. 277 (1983).  The Parole Commission's actions do not constitute

the imposition of punishment.  A parole hearing occurs after the end of a criminal

prosecution, including the sentencing, and is not part of it.  See Morrissey v.

---

[2] The Parole Commission did not follow this recommendation and was under no obligation to do so, as recommendations with regard to parole issued by district courts are not binding on the Parole Commission.  See, e.g., Page  v. United States Parole Commission, 651 F.2d 1083, 1086 (5th Cir. 1981) (Parole Commission not bound by sentencing judge's recommendation regarding parole); Bachman v. Jeffes, 488 F.Supp.107, 108 (M.D. Pa. 1980) (Commission not bound by judge's recommendation); Levesque v. Brennan, 864 F.2d 515, 518 (7th Cir. 1988) (sentencing court statement that certain information in presentence report should not be considered by the Parole Commission is merely advice and is not binding unless accompanied by a formal finding under Fed. R. Crim. P. 32)).

Brewer, 408 U.S. 471, 481 (1972).  Thus, the Parole Commission's decision that petitioner is not suitable for parole under 18 U.S.C. § 4206(a) is neither "punishment" nor cruel and unusual punishment under the Eighth Amendment.

When Furnari's sentencing judge imposed a 100-year sentence on a man already in his 50's, it was clearly contemplated that he might be an individual who should serve the remainder of his natural life in confinement. Neither Furnari's age nor his medical condition create an entitlement to, nor a presumption in favor of, release on federal parole. Furnari has not cited any precedent which holds otherwise.  The Parole Commission has made findings which are supported by a rational basis in the record regarding the extreme aggravation of his crimes, and has made the discretionary determination that releasing him at this time would depreciate the seriousness of these offenses and promote disrespect for the law. The court should decline Furnari's invitation to substitute its judgment for that of the Parole Commission regarding his suitability for parole under the standards of the federal parole statute.  See Addonizio, supra and Campbell, supra.

## V. <u>Conclusion</u>

For the above-stated reasons, the petition for a writ of habeas corpus should be denied.

Respectfully submitted,

PETER J. SMITH
United States Attorney

Date:  January 22, 2013                    s/ Melissa Swauger_____
MELISSA SWAUGER
Assistant United States Attorney
Attorney I.D. No. PA82382
ANITA L. LONG
Paralegal Specialist
United States Attorney's Office
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA  17108-1754
Phone:  (717)221-3382
Facsimile: (717)221-2246

19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER FURNARI,** | : | **Civ. No. 3:CV-12-2378** |
| **Petitioner** | : | |
| | : | **(Nealon, J.)** |
| **v.** | : | |
| | : | |
| **UNITED STATES PAROLE COMMISSION,** | : | |
| **and WARDEN, Federal Correctional** | : | |
| **Institution at Allenwood, Pennsylvania,** | : | |
| **Respondent** | : | **Filed Electronically** |

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.  That on January 22, 2013, she served a copy of the attached

### RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

via ECF and that Flora Edwards, Esquire is a filing user under the ECF system. Upon the electronic filing of a pleading or other document, the ECF system will automatically generate and send a Notice of Electronic Filing to all filing users associated with this case. Electronic service by the Court of the Notice of Electronic Filing constitutes service of the filed document and no additional service upon the filing user is required.

Addressee:

fmelaw@aol.com

s/ Anita L. Long
ANITA L. LONG
Paralegal Specialist