UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

---

CHRISTOPHER FURNARI,

        *Petitioner,*

  -against-

        *Civil Action No.* 3:12-CIV 02378 (WJN)(DB)

UNITED STATES PAROLE COMMISSION
and WARDEN, Federal Correctional Institution
at Allenwood, Pennsylvania,

        **ELECTRONICALLY FILED**

        *Respondents.*

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2241**

---

Flora Edwards
*Attorney for Petitioner*
115 Broadway - Suite 1505
New York, New York 10006
212-785-3344
FMELAW@aol.com

# TABLE OF CONTENTS

Page

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I        THE UNITED STATES PAROLE COMMISSION IS A PROPER RESPONDENT AS LONG AS THE JURISDICTIONAL REQUIREMENTS OF 28 U.S.C. §2243 HAVE BEEN MET . . . . . . . . . . . . . . 1

POINT II       THE DEFERENCE ACCORDED COMMISSION DETERMINATIONS DOES NOT RENDER DECISIONS WHICH ARE DEVOID OF ANY RATIONAL BASIS IMMUNE FROM JUDICIAL REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT III      RESPONDENT'S ASSERTION THAT IT IS FREE TO DISREGARD COMPARABLE PERIODS OF INCARCERATION FOR SIMILAR OFFENSES COMMITTED UNDER SIMILAR CIRCUMSTANCES IGNORES THE UNDERLYING PURPOSE OF THE PCRA AND VIOLATES THE EIGHTH AMENDMENT PROSCRIPTION AGAINST CRUEL AND UNUSUAL PUNISHMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# INTRODUCTION

Resondent's papers in opposition to Petitioner's Writ of Habeas Corpus rests on a fallacious factual predicate and from there proceeds to an improper legal conclusion. In this reply Petitioner will demonstrate that contrary to the Respondent's contentions (1) the United States Parole Commission is a proper respondent as long as the jurisdictional requirements of 28 U.S.C. §2243 have been met; (2) the deference accorded Commission determinations does not render decisions which are devoid of any rational basis immune from judicial review; (3) Respondent's assertion that the Commission is free to disregard comparable periods of incarceration for similar offenses committed under similar circumstances ignores the underlying purpose of the PCRA and violates the Eighth Amendment proscription against cruel and unusual punishment

As to Respondent's remaining points, Petitioner relies on his initial Petition.

## POINT I

**THE UNITED STATES PAROLE COMMISSION IS A PROPER RESPONDENT AS LONG AS THE JURISDICTIONAL REQUIREMENTS OF 28 U.S.C. §2243 HAVE BEEN MET**

Respondent's assertion that the United States Parole Commission should be dismissed as a party to the within action on the grounds that "the only proper respondent in a habeas corpus action is the warden of the institution where the petitioner is confined." (Response at 1, FN 1)results from a misreading of 28 U.S.C.§§2241 and 2243.

1

The jurisdictional requirement of §2241 explicitly provides that "[w]rits of habeas corpus may be granted by ... the district courts ... *within their respective jurisdictions*." (Emphasis added). Title 28 U.S.C. §2243 provides in relevant part that "The writ, or order to show cause shall be directed to the person having custody of the person detained"

*Rumsfeld v. Padilla,* 542 U.S. 426, 124 S.Ct. 2711 (2004), relied upon by Respondent, is not to the contrary. In *Rumsfeld,* the Supreme Court held that the district court correctly held that it lacked jurisdiction over the petition, because the petition must be brought in the jurisdiction where prison holding the detainee is located. Unlike the Petitioner in *Rumsfeld*, Furnari, who is confined in Allenwood Federal Correctional Center, has satisfied the jurisdictional requirement by naming the Warden as a respondent and by bringing his §2241 proceeding in the district of his confinement.

Once the jurisdictional requirement is satisfied, there is no authority for Respondent's position that the United States Parole Commission may not also be named as a proper respondent, especially in light of the well-settled holding that decisions of the parole commission are normally assailable solely in a Section 2241 proceeding. *See Stroud v. U.S. Parole Commission*, 668 F.2d 843 (5th Cir. 1982); *Benny v. U.S. Parole Com'n.*, 295 F.3d 977 (9th 2002); *Berg v. United States Parole Comm'n,* 735 F.2d 378, 379 (9th Cir.1984) (considering on the merits a §§ 2241 habeas petition challenging Commission's computation of salient factor score for purposes of re-parole); *Benites v. U.S. Parole Commission,* 595 F.2d

518, 520-21 (9th Cir. 1979)(affirming district court's grant of limited habeas corpus relief in the nature of an order for a new parole hearing when Commission applied the wrong standards in denying parole eligibility).

Here, the Warden is named solely in her official capacity as petitioner's immediate custodian; no actions of the Warden or of the Bureau of Prisons are at issue. In contrast, the Petition challenges the actions of Respondent United States Parole Commission ("USPC"), which is the agency charged by law with considering and setting the petitioner's actual date of release from confinement. 18 U.S.C. §4203(b) (prospectively repealed). Significantly, in its request for an extension of time to file its papers in opposition, Respondent acknowledged that "[b]ecause Petitioner's claims are properly addressed by the Parole Commission, the United States requested assistance from legal counsel for the Parole Commission to assist in responding to each of the allegations of the habeas petition." (Respondent's Motion for an Extension of Time at ¶4). It would appear ludicrous to dismiss the only party with the ability and the authority to properly address the claims raised in the petition. Therefore, Respondent's request to dismiss the action as to the United States Parole Commission should be denied.

## POINT II

**THE DEFERENCE ACCORDED COMMISSION DETERMINATIONS DOES NOT RENDER ITS DECISIONS IMMUNE FROM JUDICIAL REVIEW OF AN ARBITRARY DETERMINATION WHOLLY LACKING IN ANY RATIONAL BASIS**

The position advanced by Respondent which seeks to virtually immunize the Commission's from judicial review is not supported by the law.

Where a parole statute uses mandatory language to " to "creat[e] a presumption that parole release will be granted" when the designated findings are made, a constitutionally protected liberty interest in parole release is created under the due process clause. *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415 (1987).

Title 18 U.S.C. § 4206(a)(1)-(2) provides that:

> If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines: (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and (2) that release would not jeopardize the public welfare; subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), <u>such prisoner shall be released.</u> [emphasis added]

Accordingly, the federal statute, exactly like the Montana statute addressed in *Allen*, includes the mandatory language ("shall") to create a presumption that parole release will be granted when the designated findings are made.

Contrary to Respondent's contention, *Allen* does not stand for the principle that all is required of the Commission to preclude judicial review is to provide a statement of reasons for denial of parole.   Instead, *Allen* stands for the proposition that there are, in fact, restrictions on the absolute discretion of the parole board and that its decisions are subject to judicial review. Id at  482 U.S. at 369, 107 S.Ct. at 2416.[1]

In *Zannino v. Arnold*, 531 F.2d 687, 690-691 (3d Cir. 1976) this Court held:

> to interpret 18 U.S.C. §4203(a) as precluding any judicial inquiry into the adequacy of the evidence on which the conclusions embodied in the Board's statement of reasons for denying parole were based would raise troublesome constitutional issues.  As the Supreme Court has stated ''(t)he touchstone of due process is protection of the individual against arbitrary action of government." [citation omitted].  In light of these considerations, we are unable to read 18 U.S.C. s 4203(a) as precluding any such inquiry. The role of judicial review of a Parole Board decision on application for a writ of habeas corpus is to insure that the Board has followed criteria

---

[1]*United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235 (1979) relied on by Respondent is wholly inapposite.  The Court in *Addonizio*, never reached the question as to the validity of the Parole Commission's actions holding only that subsequent actions taken by the Parole Commission-whether or not such actions accord with a trial judge's expectations at the time of sentencing-do not retroactively affect the validity of the final judgment itself. And do not provide a basis for a collateral attack pursuant to § 2255.

> appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious, nor based on impermissible considerations. In other words, the function of judicial review is to determine whether the Board abused its discretion. This function cannot be fulfilled without making some inquiry into the evidence relied on by the Board to support its expressed reasons for denying the parole.

*See also Gambino v. Morris*, 134 F.3d 156 (3d Cir. 1998)(commission's failure to show good cause for denial of parole warranted remand).

Having acknowledged that Petitioner's release would not jeopardize the public welfare (Res. at 14), Respondent cites as its sole basis for denial of parole the determination "that release would not depreciate the seriousness of his offense or promote disrespect for the law". Contrary to Respondent's assertion, the activities which resulted in Petitioner's conviction did not arise as a result of his alleged role as "consigliere" of the Lucchese crime family. Nor was he " practically the equivalent of the underboss". Nor did he participate on the "Commission" or any other "national ruling body of the LCN" (Res. at 3). In fact, as the Government conceded "Furnari was only a capo in the Lucchese Family until the early eighties and consequently could not have sat on the Commission at the time of the Galante homicide" (See Exhibit H annexed to the Petition).

Next Respondent seeks to justify the Commission's decision based on uncharged conduct which is supported solely by discredited information provided by Anthony Casso. It is significant that, contrary to Respondent's contention, Casso has not been deemed

4

unreliable solely because he was involved in criminal activity in the period following his cooperation agreement (Res Br at 5) In an Affidavit executed on December 17, 1997, Assistant United States Attorney George A. Stamboulidis, attested to the fact that the Government had deemed Casso to be an unreliable witness because the information he provided to the Government had been proven to be untrue (Exhibit A). It is notable that contrary to Respondent's contention, there is no corroboration to the information provided by Casso. Indeed, according to the Government's own witnesses Furnari was not a capo in 1975 at the time Schfeiler was murdered or at the time the attempt was made on Abinanti and therefore could not be held accountable for activities committed by associates over which he had no control. (See Exhibits B: Carew Testimony at 581 and Kelly Letter, annexed to the Petition as Exhibit H). *See U.S. ex rel. Farese v. Luther*, 953 F.2d 49 (3rd Cir. 1992). Finally, Furnari's continued incarceration for six years prior to the murder of Taglianetti renders any connection between the Taglianetti's murder and Appellant so tenuous as to be non-existent.[2] Nor is there a scintilla of evidence, other than Casso's discredited information, to connect Furnari in any way to the murder of

---

[2]*United States v. Diaz* 176 F.3d 52 (2d Cir 1999); *see also United States v. Grimmett*, 150 F.3d 958, 961 (8th Cir.1998)(where imprisonment establishes withdrawal the withdrawal absolved a member of a conspiracy of his co-conspirator's act committed after his withdrawal) *United States v. Thomas*, 114 F.3d 228, 267 (D.C.Cir.), *cert. denied*, 522 U.S. 1033, 118 S.Ct. 635, 139 L.Ed.2d 614 (1997) (a member of a conspiracy may be absolved of his co-conspirators' acts committed after his withdrawal); see also In *United States v Bellomo*, 176 F.3d 580, 595 (2d Cir.1999)(The difficulty lies in a rational trier of fact could not conclude that the victim was "put to death at least four months after the conspiratorial conclave".

DeCicco. Thus, having misstated Furnari's role within the Enterprise and having held him responsible for crimes committed by others over whom he had no authority, the Commission inexplicably concludes that 27 years imprisonment is insufficient to promote respect for the law. Respondent is wrong.

Respondent's reliance on those cases in which courts have rejected claims of disparity in sentencing between co-defendants is misplaced. *See Entrekin v. United States,* 508 F.2d 1328 (8th Cir,. 1974)(claim of a more severe sentence than that received by his wife, a co-defendant denied on jurisdictional grounds); *Randall v. United States,* 324 F.2d 726 (10th Cir. 1963)(trial court stated the circumstances which reasonably led it to pronounce different sentences in the situation now under consideration); *Augustine v. Brewer,* 821 F.2d 365 (7th Cir. 1987)(Commission did not abuse its discretion by requiring petitioner to serve 12 more months than his co-defendant based upon petitioner's participation in the conspiracy for 12 months more than his co-defendant and to have inferred that the longer duration of petitioner's involvement in the conspiracy resulted in his involvement with greater quantities of marijuana which, in turn, would also justify a release date beyond that assigned his co-defendant).

In *Lynch v. U.S. Parole Com'n* 768 F.2d 491 (2nd Cir. 1985), the Court of Appeals rejected the argument that Commission failed to consider parole decision on co-defendant where Lynch did receive consideration of the parole treatment of his co-defendants and

was denied parole where, unlike Petitioner, Lynch's record demonstrated poor institutional adjustment including numerous misconduct reports. *Compare with Melvin v. Petrovsky*, 720 F.2d 9 (8th Cir. 1983)(where there was nothing in record to show that United States Parole Commission considered parole status of codefendant and where offense classification regulation appeared to have been applied inconsistently to defendant and codefendant, there was failure of the Commission to follow its own rules, and reconsideration was accordingly ordered). *See also Hodges v. O'Brien*, 589 F.Supp. 1225 (D.C.Kan.,1984) (court acknowledged the obligation of the Commission consider co-defendant disparity only in general).

Like *Melvin*, and as distinguished from the cases relied on by Respondent, in this case, Petitioner's co-defendant Anthony Bruno Indelicato, who was actually convicted of three murders charged in the case, served 20 years imprisonment and his co-defendant Salvatore Santoro, was granted parole after serving 15 years. Notably Santoro, unlike Petitioner, who was neither a leader in the Enterprise nor held a seat on the Commission, was alleged to be the underboss of the Lucchese crime family and allegedly held a seat on the Commission which was alleged to have ordered the murders charged in the Indictment.

However, even setting aside the terms of imprisonment served by his co-defendants, there can be no rational basis for the Commission decision to deny parole based on the

7

finding that "a grant of parole to an an 88 year old model prisoner who has served more than 27 years in prison without a single disciplinary incident would "depreciate the seriousness of [his] offense conduct and promote disrespect for the law".   While not an exact science, a determination of what, in fact, constitutes just punishment achieves the twin objectives of acknowledging the seriousness of the offense and promoting respect for the law may be ascertained by basing determination for similar offenses committed under similar circumstances.  *See Wilden v. Fields,* 510 F.Supp. 1295 (D.C. Wis., 1981)( it is important for the parole process to achieve an aura of fairness by basing determinations of just punishment on comparable periods of incarceration for similar offenses committed under similar circumstances.)   The more than two dozen sentences listed in the Petition are designed to demonstrate the range of punishments almost universally determined to reflect the seriousness of the offenses and to promote respect for the law.

Unlike Mangano, Bellomo, Corazzo, Urso, DeFede, Rizzuto, Benepe and D'Amico, Petitioner has never been alleged to have been the leader or "boss" of a criminal enterprise. In each of these cases not a single term of imprisonment in excess of 240 months was deemed necessary to reflect the seriousness of the offense and promote respect for the law. Similarly, a term of imprisonment of 240 months was deemed sufficient to reflect the seriousness of the offense and promote respect for the law when imposed upon a member of the ruling panel of the Ayran Nation who was convicted of conspiring to commit

8

multiple murders <u>while in prison</u>.

Contrary to Respondent's assertion, this is not a case in which Petitioner contests a more lenient decision for another offender (Res Br at 12). Instead Petitioner calls into question the rationality of a decision that is dramatically inconsistent with the determinations of just punishment for the vast majority, if not all, similar offenses committed under similar circumstances. It is noteworthy that Respondent is unable to identify a single instance in which the Commission determined that the grant of parole to a 87 year old model prisoner who has been convicted of extortion and who has served almost 30 years in prison based on uncharged conduct would depreciate the seriousness of the offense and promote disrespect for the law. It is respectfully submitted that in this case the Commission's exercise of discretion represents an egregious departure from rational decision-making.

## POINT III

**RESPONDENT'S ASSERTION THAT IT IS FREE TO DISREGARD COMPARABLE PERIODS OF INCARCERATION FOR SIMILAR OFFENSES COMMITTED UNDER SIMILAR CIRCUMSTANCES IGNORES THE UNDERLYING PURPOSE OF THE PCRA AND VIOLATES THE EIGHTH AMENDMENT PROSCRIPTION AGAINST CRUEL AND UNUSUAL PUNISHMENT**

Respondent argues that because the statute is silent, the Commission has no obligation to take into account the terms of imprisonment served by similarly situated

9

offenders in granting parole, apparently leaving the Commission free to impose completely disparate punishment on similarly situated offenders with no restraint on its absolute discretion. ( Res Br at 11).    Respondent is wrong.

In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778 (1984) the Supreme Court held that if a statute is silent or ambiguous with respect to specific issue of law in case, using traditional tools of statutory construction to determine whether Congress had intention on precise question at issue, and if Congress' intent is clear, court's inquiry is at end and the agency is required to give effect to unambiguously expressed intent of Congress. *See also Prestol Espinal v. Attorney General of United States*, 653 F.3d 213 (3rd Cir 2011).   However, the Court must defer to a permissible interpretation of statute by the appropriate administrative agency only when the statute does not directly speak to the issue and congressional intent cannot be gleaned from text of the statute, or its legislative history. *Director, Office of Workers' Compensation Programs v. Sun Ship, Inc.*, 150 F.3d 288 (3rd Cir. 1998).   However, where the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters,  the intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Morgan v. Gay*, 466 F.3d 276 (3rd Cir. 2006).

Applying these principles to the case before the Court,  Congress' intent in enacting

the PCRA clearly imposes a duty on the Commission to base its determinations on comparable periods of incarceration for similar offenses committed under similar circumstances . *See Wilden v. Fields,* 510 F.Supp. 1295 (D.C. Wis., 1981).   In 1973, the United States Parole Board adopted guidelines that established a "customary range" of confinement. See *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 391, 100 S.Ct. 1202, 1206, 63 L.Ed.2d 479 (1980). Congress in 1976 endorsed this initiative through the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201-4218, an attempt to envision for the Parole Commission a role, at least in part, "to moderate the disparities in the sentencing practices of individual judges." *United States v. Addonizio,* 442 U.S., at 189, 99 S.Ct., at 2242. <u>The underlying purpose of the Parole Commission and Reorganization Act was to ensure that  the parole process to achieve an aura of fairness by basing determinations of just punishment on comparable periods of incarceration for similar offenses committed under similar circumstances</u>. H.R.Conf.Rep. No. 838, 94th Cong., 2d Sess. 26, *reprinted in* 1976 U.S.Code Cong. & Ad.News 351, 358 [emphasis added].  Based on the clear legislative intent driving enactment of the PCRA,  Respondent's contention that  the Commission is empowered to create the very disparities  that the  PCRA was enacted to correct must fail under the light of judicial scrutiny.    Moreover, in this case, the Commission's determination creates such a disparity as to be violative of the Eighth Amendment.

    The Eighth Amendment prohibits punishments that involve the unnecessary and

11

wanton infliction of pain or that are grossly out of proportion to the severity of the crime, including actions that are totally without penological justification. *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The Eighth Amendment draws its meaning "from the evolving standards of decency that mark the progress of a maturing society." *Id.*

Here the denial of parole is so inconsistent with the periods of imprisonment almost universally deemed necessary and sufficient to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" 18 U.S.C. §3553 as to be "so totally without penological justification that [it] result[s] in the gratuitous infliction of suffering." *Gregg v. Georgia,* 428 U.S. 153, 183, 96 S.Ct. 2909, 2929, 49 L.Ed.2d 859 (1976) and violates the "[t]he concept of proportionality [which] is central to the Eighth Amendment." *Miller v. Alabama*, 132 S.Ct. 2455 (2012)

As this Reply is written, Petitioner is once again the hospital suffering from pneumonia. This is the fifth time he has been hospitalized in the past twelve months. To deny parole to a model prisoner with limited life expectancy who has served 27 years in prison for a conviction on extortion charges based on uncharged conduct, is so totally without penological justification that [it] result[s] in the gratuitous infliction of suffering in violation of the Eighth Amendment proscription against cruel and unusual punishment.

12

## CONCLUSION

For the foregoing reasons and for the reasons set forth in the Petition, the Court should issue the writ of habeas corpus, ordering the respondent Warden to release the petitioner from physical confinement and the respondent USPC to place him on parole for the balance of his sentence.

                                                          Respectfully submitted,

Dated:   February 11, 2013   /s/ *Flora Edwards*
                                                          Flora Edwards
                                                          Attorney for Petitioner
                                                          115 Broadway - Suite 1505
                                                          New York, New York 10006
                                                          212-785-3344
                                                          FMELAW@aol.com